# In the United States Court of Federal Claims

No. 04-1514
(Filed: December 20, 2012)

|  |  |  |
|---|---|---|
| VOTH OIL COMPANY, INC., et al., | ) ) | **Class Action Settlement; RCFC** |
|  | ) | **23(e); Rails-to-Trails litigation;** |
| Plaintiffs, | ) | **Attorneys' Fees Under URA, 42** |
|  | ) | **U.S.C. § 4654(c); Contingent Fee** |
| v. | ) | **Agreement** |
|  | ) |  |
| THE UNITED STATES, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

*Deborah Cay Brown McIlhenny*, Wichita, KS, for plaintiffs. *Larry D. Toomey* and *Terry C. Pilgreen*, Wichita, KS, of counsel.

*James D. Gette* and *Reuben S. Schifman*, United States Department of Justice, Washington, DC, with whom was *Ignacia S. Moreno*, Assistant Attorney General, for defendant.

**OPINION APPROVING SETTLEMENT AGREEMENT**

**FIRESTONE**, *Judge*.

This matter comes before the court on the parties' joint motion for final approval of the settlement agreement between the United States ("the government") and the plaintiffs in this opt-in class action Rails-to-Trails case, arising from the creation of a recreational trail along a 15-mile long former railroad corridor running across plaintiffs' land between the towns of Garden Plain and Wichita in Sedgwick County, Kansas.

Plaintiffs alleged that the government "took" their property interests without just compensation when it authorized the conversion of the rail corridor to a recreational trail.

In exchange for a resolution of all claims in this case, this settlement agreement will provide plaintiffs with one hundred percent of the appraised value of their property interests and pre-judgment interest on their claims.  Plaintiffs' counsel will also receive as part of the settlement attorneys' fees and costs as authorized by the "fee-shifting" provision of the Uniform Relocation Assistance and Real Property Acquisition Policies Act ("URA"), 42 U.S.C. § 4654(c) (2006).[1]  The parties now ask the court to approve this settlement.

Plaintiffs' counsel also seek approval of their contingent fee agreement, under which plaintiffs' counsel will also receive, as attorneys' fees, a certain percentage of the payment to be made to the class members under the settlement agreement.  In particular, plaintiffs' counsel seek resolution of whether the attorneys' fees included in the

---

[1] Generally, in the United States, each party to a lawsuit bears its own attorneys' fees and costs, regardless of the outcome of the proceedings.  See Bywaters v. United States, 670 F.3d 1221, 1226-27 (Fed. Cir. 2012).  For certain types of cases, however, Congress has enacted statutes that "shift" some of the burden of paying attorneys' fees and costs from a plaintiff to a defendant.  Id.  The "fee-shifting" provision of the URA is one example.  The URA states in relevant part:

> The court rendering a judgment for the plaintiff in a proceeding brought under section 1346(a)(2) or 1491 of Title 28, awarding compensation for the taking of property by a Federal agency, <u>or the Attorney General effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding.</u>

42 U.S.C. § 4654(c) (emphasis added).

settlement under the "fee-shifting" provision of the URA should be added into the total sum against which their contingent fee would be applied.

The court gave preliminary approval of the settlement agreement on October 18, 2012, and a fairness hearing was conducted on December 10, 2012. For the reasons discussed below, the settlement of the class action is **APPROVED**. The court further holds that, while plaintiffs' counsel may collect attorneys' fees in accordance with their contingent fee agreements, they may not include the settlement agreement's statutory attorneys' fee in the sum against which they will apply the contingent fee.

## I.  BACKGROUND

### A.  Terms of Settlement Agreement

The present action was filed in 2004, and beginning in 2006, the parties entered into an appraisal and settlement process for resolving the claims in this case. The proposed settlement thus ends over eight years of litigation regarding plaintiffs' Fifth Amendment takings claims against the government for authorizing the conversion of a former rail corridor across plaintiffs' properties into a recreational trail under the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d). The proposed settlement agreement resolves the claims of the 41 opt-in class members who owned the 48 parcels at issue in this case.

As part of the proposed settlement, the government has agreed to pay the class members one hundred percent of the fair market value of the property which they alleged had been taken, based on the parties' agreed-upon appraisals of the properties. The fair market value of plaintiffs' combined property interests amounts to $998,700.01. The

United States has also agreed to pay the pre-judgment interest on this amount for an additional $260,827.46. Thus, the total amount of just compensation the class members are to receive under the proposed settlement is $1,259,527.47.

The United States has further agreed to pay plaintiffs $228,749.00 in attorneys' fees as part of the settlement. This figure was calculated using the "lodestar" method, under which attorneys' fees are calculated by multiplying a reasonable amount of hours expended on the litigation by plaintiffs' counsel's reasonable hourly rate. Finally, the United States has agreed to pay $54,481.00 for plaintiffs' costs and expenses. As noted above, these fees and costs are authorized under the "fee-shifting" provision of the URA. 28 U.S.C. § 4654(c). The total payment, including attorneys' fees, costs and expenses, and just compensation, amounts to $1,542,757.47.

In exchange for this payment, the class members will expressly release the United States from any and all claims related in any way to the matters asserted or that could have been asserted in their pleadings in this case. The settlement will resolve "all rights, claims, or demands arising out of the matters asserted in the pleadings which the parties have asserted or could have asserted in this civil action with prejudice." Settlement Agreement ¶ 14, ECF No. 86.

### B.  Plaintiffs' Contingent Fee Agreement

Plaintiffs' counsel also seek to have this court approve the contingent fee agreement entered into between plaintiffs' counsel and each of the class members in this case. Each of the opt-in plaintiffs signed a fee agreement providing that plaintiffs' counsel are to receive 40% of any award reached through litigation or settlement, after

subtracting costs and expenses from the total award, as required by Kansas law. See Kansas Rules of Professional Conduct § 1.5(d). Plaintiffs' counsel propose that this "net award" should include (1) the value of plaintiffs' property interests that were "taken," (2) the pre-judgment interest, and (3) the attorneys' fees paid by the government as authorized by the URA, for a total of $1,488,276.47. Forty percent of the "net award" would be $595,310.59, representing the total fee obligation of the class members.

The contingent fee agreement further provides, however, that plaintiffs' attorneys will give a dollar-for-dollar credit for the attorneys' fees they secure as part of a settlement agreement or judgment at trial. As discussed above, the government has agreed to pay $228,749.00 in URA attorneys' fees as part of the settlement. After subtracting this amount from the total fee obligation, the class members' responsibility under the contingent fee arrangement as proposed by plaintiffs' counsel is $366,561.59. This total fee responsibility is to be divided among the class members on a pro rata basis, based on each class member's percentage of the total just compensation (property value plus prejudgment interest) amount, which, as noted above, is $1,259,527.47.

There is no dispute that this fee arrangement was discussed with each of the opt-in plaintiffs prior to their signing the contingent fee agreement. Plaintiffs' counsel also explained to the opt-in plaintiffs the possibility that any recovery from the lawsuit would be taxable. It is also not disputed that the proposed settlement and the contingent fee arrangement were also explained in the notice to the opt-in plaintiffs that was sent in advance of the fairness hearing.

### C. Notice of Settlement to Class Members, Objections to the Settlement, and the Fairness Hearing

On October 18, 2012, the court gave preliminary approval of the proposed settlement agreement, approved the parties' joint proposed plan for providing notice to the class members of the proposed settlement, and scheduled a fairness hearing for December 10, 2012. The notice to the class members solicited written comments from the class members regarding the proposed settlement agreement and also provided that there would be an opportunity for any class member to speak at the hearing. No class members requested to speak at the fairness hearing. The parties did, however, receive two comments on the proposed settlement agreement. The first commenter supported the proposed agreement. The second commenter objected to the proposed agreement on the grounds that the government was not going to pay all of the fees owed by the class to their counsel under the contingent fee agreement.[2]

The court conducted the fairness hearing on December 10, 2012 at the United States District Court for the District of Kansas in Wichita, Kansas. None of the class members attended. The court now turns to the parties' joint motion for approval of the proposed settlement agreement and plaintiffs' counsel's request for approval of the contingent fee arrangement.

---

[2] This class member also objected to the fact that any recovery received would be taxable income. The class member argued that the government should not be entitled to receive taxes on funds paid as just compensation. However, involuntary conversions of property, including condemnation awards, are usually subject to taxation under the Internal Revenue Code. See 26 U.S.C. § 1033(a). In addition, as noted above, plaintiffs' counsel gave notice to potential class members that they might have to pay taxes on any recovery. The court concludes that this objection does not defeat the reasonableness of the settlement agreement, as discussed infra.

## II.   DISCUSSION

### A.   The Settlement Agreement

Under Rule 23(e) of the Rules of the United States Court of Federal Claims, the court may approve a proposed settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Id.; see also Moore v. United States, 63 Fed. Cl. 781, 783 (2005). The court has the discretion to accept or reject a proposed settlement, but it may not alter the proposed settlement, nor may it decide the merits of the case or resolve unsettled legal questions. Adams v. United States, No. 10-60C, 2012 WL 4830563, at *2 (Fed. Cl. Oct. 11, 2012) (citing Evans v. Jeff D., 475 U.S. 717, 726-27 (1986); Nat'l Treasury Emps. Union v. United States, 54 Fed. Cl. 791, 797 (2002)).

In determining whether a settlement agreement is "fair, reasonable, and adequate," the court may consider the following factors: (1) the relative strengths of plaintiffs' case compared to the proposed settlement; (2) the recommendation of the counsel for the class regarding the proposed settlement, taking into account the adequacy of class counsel's representation of the class; (3) the reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms; (4) the fairness of the settlement to the entire class; (5) the fairness of the provision for attorney fees; and (6) the ability of the defendants to withstand a greater judgment, taking into account whether the defendant is a governmental actor or private entity. Sabo v. United States, 102 Fed. Cl. 619, 627 (2011) (citing Barnes v. United States, No. 04-1335C, 2010 WL 1904503, at *2 (Fed. Cl. May 7, 2010)); see also Moore,

63 Fed. Cl. at 784 (listing nine similar factors and citing <u>In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.</u>, 55 F.3d 768, 785 (3d Cir. 1995)).

  Turning first to the just compensation agreed to under the settlement, the court finds that this amount is fair, reasonable, and adequate as to each class member individually and to the class as a whole.  Under the terms of the settlement, the government agrees to pay plaintiffs a total of $1,259,527.47 in just compensation, which includes one hundred percent of the appraised fair market value of plaintiffs' property interests in this case as well as pre-judgment interest.  These figures are the culmination of years of collaborative negotiation following extensive discovery and are supported by class counsel, who the court finds are experienced and qualified.  In addition, as indicated by the government at the fairness hearing, the United States believes that plaintiffs' counsel presented a strong case.  The strength of their representation is reflected by the fact that the just compensation amount agreed to under the settlement represents one hundred percent of the fair market value of each class member's property interest, based on both parties' agreed-upon appraised values, plus pre-judgment interest.  In this regard, the settlement agreement is fair to each individual class member because each class member will receive one hundred percent of the fair market value of his or her individual property interest.  The agreement does not single out or reward one class member over another.  Finally, only one of the 41 class members in this case objected to the settlement agreement, a small fraction of the class as a whole.

  The court further finds that the attorneys' fees agreed to under the settlement are reasonable.  As noted above, the URA provides that for Fifth Amendment cases such as

this one, the government may reimburse plaintiffs for their "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred" during the litigation. 42 U.S.C. § 4654(c). In determining the amount of reasonable attorneys' fees under federal "fee-shifting" statutes such as the URA, "the Supreme Court has consistently upheld the lodestar calculation as the 'guiding light of [its] fee-shifting jurisprudence.'" Bywaters v. United States, 670 F.3d 1221, 1228-29 (Fed. Cir. 2012) (alteration in original) (quoting Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1672 (2010)). Under the lodestar method, attorneys' fees are calculated by multiplying a reasonable amount of hours expended on the litigation by plaintiffs' counsel's reasonable hourly rate. See, e.g., Bywaters, 679 F.3d at 1225-26. The Supreme Court has held that there is "a 'strong presumption' that the lodestar represents the 'reasonable' [attorneys'] fee," City of Burlington v. Dague, 505 U.S. 557, 562 (1992), although adjustments to the lodestar calculation may be made in exceptional circumstances, Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986).

In this case, the attorneys' fees figure was calculated using the lodestar method, without any adjustments, based on plaintiffs' counsel's records and the applicable hourly rates agreed upon by the parties. In addition, the parties indicated at the fairness hearing that the costs and expenses were based on the actual costs incurred by plaintiffs' counsel. In light of the clear Supreme Court precedent in support of a lodestar analysis, the court finds that the attorneys' fees provision in the settlement agreement, as well as the fees and costs provision, is reasonable. For all of these reasons, the court finds that the

parties' proposed settlement agreement is fair, reasonable, and adequate and warrants approval.

### B. Plaintiffs' Contingent Fee Agreement

Plaintiffs' counsel also seek approval of a contingent fee in addition to the statutory fees that are part of the settlement. The court received an objection from one of the class members, arguing that the government, not the class, should have to pay attorneys' fees. In light of this objection, plaintiffs' attorneys request that this court approve their contingent fee arrangement with the class members. Plaintiffs' counsel also ask this court to resolve whether counsel may include the URA attorneys' fees received under the settlement agreement as part of the total sum to which they intend to apply the 40% contingent fee. If the negotiated URA attorneys' fees are included in the total amount against which plaintiffs' counsel will apply their contingent fee, plaintiffs' counsel will receive $366,561.59 in attorneys' fees from the settlement amount to be paid to the class. If the negotiated attorneys' fees are not included, plaintiffs' counsel will receive $275,061.99.

To begin, the court notes that contingent fee agreements are valid even in cases where the United States agrees to pay a statutorily-prescribed fee award. Venegas v. Mitchell, 495 U.S. 82, 90 (1990) ("In sum, [the fee-shifting statute at issue] controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order."); see also Staton v. Boeing Co., 327 F.3d

938, 968 (9th Cir. 2003) ("The fees available under a fee-shifting statute are part of the plaintiff's recovery and are not dependent upon any explicit fee arrangements between the plaintiffs and their counsel.  For that reason, contingent fee agreements between counsel and client are valid in cases where statutory fees are available.").  Therefore, the statutory fee agreed to under the settlement does not place an upper limit on the amount of attorneys' fees received, and does not preclude plaintiffs' counsel from also receiving the contingent fee agreed to in their private agreements with each opt-in class member.

In this case, the court approves the contingent fee agreements, subject to the exclusion of the URA attorneys' fees that were part of the settlement agreement.  Specifically, the court's approval incorporates the following: (1) plaintiffs' counsel will give plaintiffs' a dollar-for-dollar credit for the amount of fees counsel have received from the government under the settlement agreement and (2) plaintiffs' counsel will not include the amount collected in fees from the government in the total sum against which the contingent fee applies.  The court's reasons for this holding are as follows.

First, generally, when plaintiffs receive fees and costs pursuant to a fee-shifting statute like the URA, plaintiffs' counsel may not receive both the full value of the statutory fee as well as the full value of their contingent fee.  See Venegas v. Skaggs, 867 F.2d 527, 534 n.7 (9th Cir. 1989) ("The plaintiff's attorneys are not entitled to both the statutory award and the full amount of the contingent fee.") (emphasis in original).  The fee arrangement in this case reflects this principal, and gives a dollar-for-dollar credit to class members for any statutory fees recovered under the settlement.

This same principal also requires that plaintiffs' counsel cannot apply their contingent fee to a "net award" that includes the attorneys' fees received from the government based on the URA's "fee-shifting" provision. Such a calculation would allow plaintiffs' counsel to also recover fees based, in part, on the statutory fee. See Moore, 63 Fed. Cl. at 788 ("Applying the [contingency] percentage to fees collected under the [URA] is at odds with [the] purpose [of the statute]."). Therefore, plaintiffs' counsel may only apply their 40% contingent fee against the total amount of just compensation received by plaintiffs under the settlement agreement. Plaintiffs' counsel should therefore receive 40% of $1,259,527.47, less $228,749.00 (the amount of statutory fees), for a total attorneys' fee of $275,061.99.

Finally, the court finds that the 40% contingent fee—a portion of which will come from the statutory fees provided for under the settlement agreement and a portion of which will come from the amount meant to compensate plaintiffs—is reasonable. The courts have the inherent power to supervise the collection of attorneys' fees and monitor contingent fee agreements, even where the validity of the fee contract itself has not been challenged by the parties. See Jenkins v. McCoy, 882 F. Supp. 549, 553 & n.8 (S.D. W. Va. 1995) (providing a string cite of circuit cases); Skaggs, 867 F.2d at 532. The court evaluates contingent fee contracts under a reasonableness standard. 23 Williston on Contracts § 62:9 (4th ed. 2010) ("The contingent fee contract is always subject to the supervision of the court as to its reasonableness."); Skaggs, 867 F.2d at 532; see also W. Shoshone Identifiable Grp. v. United States, 652 F.2d 41, 49 (Ct. Cl. 1981) ("We reassert, however, our inherent power to consider the reasonableness of contingent fees . . . ."). In

exceptional circumstances, such as where the fee percentage is inappropriately high, courts may find the contingent fee unreasonable and may modify the contingent fee agreement.  See Karim v. Finch Shipping Co., Ltd., 233 F. Supp. 2d 807, 810-11 (E.D. La. 2002); see also 5 Newberg on Class Actions § 15:10 (4th ed. 2002) ("When the class member initiates the communication and elects to sign a contingent fee agreement, no ethical problem exists, and these agreements may remain a matter of private contract law between the parties involved, subject, as always, to the court's powers to prevent excessive legal fees.").

The court finds that, with the conditions placed on the attorneys' fees described above, the contingent fee agreement between plaintiffs' counsel and each class member is reasonable, given the quality of counsel in this case, the risk of litigation, and the length of the proceedings.  As explained above, plaintiffs' counsel have satisfied the court of their quality.  Their representation resolves eight years of litigation, and approximately six years of appraisal activity and settlement discussions.  Furthermore, at the fairness hearing, plaintiffs' counsel indicated that there was a risk of non-recovery for certain class members because of missing deeds that could have impacted the liability determination, and yet through their efforts these class members will also share in the settlement for one hundred percent of the fair market value of their property interests.

In addition, the court finds the fee agreements reasonable in light of attorneys' fees traditionally awarded by the Kansas courts in other class action lawsuits.  The Supreme Court of Kansas has cited with approval cases and studies that demonstrate that courts have traditionally awarded fees in the 20% to 50% range in class actions, with the most

common fee awards falling in the 20% to 30% range.  See Gigot v. Cities Serv. Oil. Co., 737 P.2d 18, 28-29 (Kan. 1987) (quoting In re Warner Commc'ns Sec. Litig., 618 F. Supp. 735, 749 (S.D.N.Y. 1985)).  This court in approving a contingent fee agreement for a similar Rails-to-Trails case found that "[w]hile 40% is within the acceptable range, awards more typically range between 20% to 30% of the total fund, with 50% being the upper limit."  Moore, 63 Fed. Cl. at 787 (citations omitted).

The court finds that plaintiffs' counsel's contingent fee falls within these ranges. While the fee agreement calls for a 40% contingent fee, the dollar-for-dollar credit the class members receive for the URA fees reduces the percentage of fees taken out of the class members' just compensation payment to 22%.  This percentage falls well within the reasonable range for contingent fees in class actions as described by this court and the Kansas Supreme Court.  Therefore, the court finds that plaintiffs' counsel's contingent fee in this case, subject to the court's clarifications as discussed above, is reasonable.

### III. CONCLUSION

For the foregoing reasons, the parties' proposed settlement agreement, including the attorneys' fees agreed to as authorized by the URA, is **APPROVED.**  As discussed, plaintiffs' counsel are also entitled to receive their contingent fee.  Plaintiffs' counsel may not, however, include the negotiated URA attorneys' fees agreed to in the settlement in the total sum against which they will apply their contingent fee.  The amount against which plaintiffs' counsel may apply their contingent fee shall only contain the just compensation and interest payment agreed to in the settlement.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

                                                                s/Nancy B. Firestone
                                                                NANCY B. FIRESTONE
                                                                Judge